UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

      v.                                Case No. 08-CR-262

DENNIS M. BEDELL,

        Defendant.

---

### GOVERNMENT'S SENTENCING MEMORANDUM

---

The government recommends that the defendant, Dennis Bedell ("Bedell"), be sentenced to a term of imprisonment of 120 months, or 12 months above the advisory range specified in the presentence report, and a supervised release term of life. The government is advocating an above-guidelines sentence, among other reasons, because of the unusual and deeply-troubling circumstances under which Mr. Bedell's child pornography collection came to light.

### The Nature and Circumstances of the Offense

Child pornography is a problem of epidemic proportions world-wide, in large measure because of the ease with which images are created, stored, and disseminated using computers. According to the United Nations, more than 200 new child pornography images are circulated daily and "[i]mages of sexually exploited children are not only growing in number but are also increasingly shocking." Najat Maalla, REPORT OF UNITED NATIONS SPECIAL RAPPORTEUR ON THE SALE OF CHILDREN, CHILD PROSTITUTION AND CHILD PORNOGRAPHY ¶¶ 14, 36, 38 (July 13, 2009) (available at http://www2.ohchr.org/english/issues/children/rapporteur/index.htm).

However, as a thoughtful sentencing judge in another district has recently observed:

> once it enters the legal system, child pornography undergoes sterilization. The sterilization goes far beyond properly removing emotion from sentencing decisions. Images are described in the most clinical sense. Victims all too often remain nameless. The only emotions on display are those of defendants, sorry that their actions were discovered by law enforcement.

*United States v. Cunningham*, ___ F.Supp.2d ___, 2010 WL 308822, * 2 (N.D. Ohio Jan. 26, 2010).

In determining an appropriate sentence for Mr. Bedell, the Court should not lose sight of the terrible nature of this crime.[1] Mr. Bedell and others like him around the world contribute to the seemingly-insatiable demand for child pornography. His crime is thus a very serious one, even though he was an end-user of child pornography and not engaged in its production or distribution. The sentencing guidelines recognize the seriousness of Bedell's offense by providing for a hefty base offense level, as well as offense-level enhancements based on possession of more than six hundred images of child pornography, possession of images of very young children, and possession of images that qualify as sadistic or masochistic. Appropriately, the guidelines also take into account that a computer was used to facilitate the defendant's collection and storage of these images.

The guidelines do *not* capture the very disturbing and unusual circumstances under which Mr. Bedell's collection came to light. In short, Mr. Bedell videotaped his daughter and his daughter's friends while they were showering and using the toilet in the bathroom of his residence.[2] Only after police were called to his residence to address that troubling situation did they discover Mr.

---

[1] The images charged in the information and the images that form the basis for specific sentencing enhancements, as well as a sampling of other images found in the defendant's collection, will be available to the Court for *in camera* inspection at the sentencing hearing.

[2] These allegations have been in the public domain since local media outlets covered the state charges against Bedell in 2008. This memorandum does not identify any of the persons videotaped by Bedell by name.

2

Bedell's vast collection of child pornography. Mr. Bedell was not charged with production of child pornography because the images he captured on videotape were not sexually explicit, as that term is defined in federal law. Nonetheless, these circumstances are not present in the 'typical' child pornography case. The fact that Bedell videotaped these young people surreptitiously, while they were using the bathroom, is certainly an aggravating circumstance that warrants consideration by the Court, either under Guideline Section 5K2.0(a)(1)(B) or, to the extent guideline departures are obsolete, under the Section 3553(a) rubric.

It is also significant that the defendant has failed to acknowledge and come to terms with this conduct. While narrowly accepting responsibility for the federal child pornography offense charged in the information (thus qualifying for acceptance-of-responsibility points under U.S.S.G. Section 3E1.1), Mr. Bedell persists in denying that he was videotaping his daughter and his daughter's friends for prurient reasons. In his objections to the presentence report, Bedell maintains, as he did on the night of his arrest, that the hidden video cameras in his bathrooms were installed to monitor his teenage daughter's smoking habits. In fact, he now claims it was his ex-wife's idea to install the cameras. There are several reasons to disbelieve Bedell.

First and foremost, Bedell's sexual interest in young girls could not be clearer. His vast collection of child pornography and child erotica, camcorder videos of girls in bathing suits, girls' underwear and bathing suits, children's socks, and other physical items recovered from the defendant's bedroom all testify to a very strong and consistent sexual interest in underage girls. This evidence suggests that Bedell's ex-wife was *not* providing "intentionally inaccurate and/or untrue" information when she reported that Bedell had once confessed to her a sexual interest in young girls. More importantly, it suggests Mr. Bedell is not telling the truth about his reasons for clandestinely

3

videotaping young people while they were showering and toileting.

Bedell's daughter and her 16-year old overnight guest clearly thought that the videotaping was for some improper purpose that made them deeply uncomfortable, or they would not have whispered to Sheriff's Deputies who arrived at Bedell's house that they wanted to leave. Bedell's daughter claims that her father invited the houseguest to spend the night "all on his own" and worked out the details with the girl's grandmother. Another family member told police that Bedell would disappear to his bedroom, where the video monitors were located, whenever Bedell's daughter's friend would take a shower, re-emerging when this person finished showering.

Lastly, the defendant should be disbelieved about the hidden video cameras because he prevaricated and lied during his initial interview with Sheriff's deputies. Bedell was clearly uncomfortable with the deputies' presence (he complained about the late hour, then locked his bedroom door *en route* to the kitchen table where the interview took place). After first denying any videotaping, Bedell came up with the story that he had been trying to catch his daughter smoking (he did not then claim it had been his ex-wife's idea). He then tried to minimize his conduct by claiming that he held up his hands to block out anything he should not have been seeing. He also told the Sheriff's Deputy that he "didn't capture anything or record anything," but among the items recovered from Bedell's bedroom were video recordings of at least three different young people using the bathrooms in Bedell's residence with their genitals exposed to the camera(s). If, in fact, the defendant was making these recordings to monitor his daughter's smoking habits, why were these recordings saved *at all* (especially those of the children other than his daughter)?

**The Defendant's Criminal History**

Just as the defendant has an excuse for videotaping his daughter and his daughter's friends,

4

he also has an excuse for assaulting a minor in 2001. In his objections to the presentence report, the defendant conveniently asserts that he was "in the throes of a seizure" when the assault occurred.[3] His victim says that the defendant held her against a wall by her neck because he was upset she accidentally killed a pet rat. Then he threatened to kill her, threw her to the ground, and got on top of her, holding her down for approximately ten minutes. All of which left bruises and scratches on the young victim's eyes, neck, left arm and shoulder, chest, and chin. Bedell argues that because he was having a seizure at the time, and has no recollection of what happened, his conviction for child abuse should not count toward his criminal score. He now wishes he had entered a plea to a lesser charge back in 2001.

The Court will recall that Mr. Bedell also claimed to be experiencing "seizures" during the pendency of this case. The government is frankly very skeptical that Bedell's seizures are anything other than malingering and an excuse for violent outbursts. The BOP medical personnel who evaluated him for competency purposes did not opine on this definitively. However, no medical doctor has been able to find an organic cause for Bedell's so-called "seizures." And, furthermore, the government questions whether the conduct described by the victim of the 2001 assault – a deliberate assault, triggered by a specific event, accompanied by a verbal death threat – is consistent with behavior typical of a seizure. It sounds more like Bedell flew into a rage and abused this child physically.

In any event, Bedell's sentencing is not the proper forum for a collateral attack on the validity of the child abuse conviction, which *should* count toward Bedell's criminal history score unless and

---

[3] Bedell has waived any right to privacy with respect to his alleged medical conditions by discussing them in detail in various submissions to the Court.

until it is overturned or expunged.

In short, Mr. Bedell has an excuse for almost everything that reflects poorly on his character, including the instant offense. Sometimes his explanations are quite elaborate. For example, he claims his possession of child pornography stemmed from obsessive collecting behavior and/or an effort to deal with erectile dysfunction rather than his inappropriate sexual interest in children. In a recent letter to the Court (docket entry 40-2), Mr. Bedell explains that he experienced an "erection problem" – because of his diabetes – and could not afford the recommended medication. So, he sought stimulation on the Internet. His "fantasy about women looking childlike to deal with the erection problem" led him to collect images of "skinny" women. In the process of obsessively copying batches of images of skinny women, he just overlooked all of the sexually-explicit images of children that ended up on his computer through "inattentiveness." He did not, he assures the Court, have any desire to "masturbate with the immoral pictures" and claims he is only attracted to women in their early 30's, and no younger. In fact, he seems to suggest that it was not the images themselves so much as the "clicking" and copying that sexually aroused him. Mr. Bedell has also attempted to minimize the seriousness of his offense conduct by claiming that some images came from nudist or "modeling" websites (these claims, first raised during Bedell's plea hearing, are more specifically rebutted in the government's response to the defendant's objections to the presentence report).

To summarize, Bedell pays lip service to acceptance of responsibility, but casts much of the blame for his conduct on diabetes, erectile dysfunction, an attraction to skinny women, obsessive-compulsive disorder, and an addiction to "the rush of the copying process," all compounded, apparently, by having two computers and a television competing for his attention. This elaborate

6

excuse-making and blame-shifting is not only implausible; it reflects very poorly on Mr. Bedell's character. It suggests that while he may be accepting responsibility in a narrow, technical sense, he has not fully come to terms with his past conduct. This, in turn, raises a concern that he is likely to re-offend.

### Protecting the Public and Providing for Deterrence

The disposition of the court should reflect the need to protect the public and provide both specific and general deterrence. Recently, the defense submitted a 15-page, single-spaced report from a "sentencing and dispositional specialist." Among the conclusions of this "specialist" are that child pornography collectors, as compared with "hands-on" sex offenders, are less dangerous to society. This "specialist" also opines that, because Bedell has not recently had any problems while out on bond, [4] he "has the capacity to follow externally imposed rules." In short, it seems to be the "specialist's" opinion that Mr. Bedell is not much of a danger to the community and presents a relatively low risk of re-offending. The government strongly disagrees.

The government submits, first, that collecting child pornography is neither a victimless crime nor one that carries with it a negligible risk of "acting out" against "real children." Indeed, research has shown that child pornography offenders have often "acted out" on their desires in the past even when they do not initially admit having done so. Michael L. Bourke & Andres E. Hernandez, "The 'Butner Study' Redux: A Report of the Incidence of Hands-on Child Victimization by Child Pornography Offenders," J. FAM. VIOL. 24: 183-191 (2009). One study shows an overall recidivism rate for child sex offenders of 31.7%, and notes that the odds of re-offending and of committing

---

[4] Early in the case, Mr. Bedell did encounter difficulties (including violent outbursts) while out of custody and living with his parents. He blamed these outbursts on seizures, also.

7

sexually violent offenses both increase substantially for offenders who viewed deviant pornography, such as child pornography. *Cunningham*, 2010 WL 308822 at *11 (citing Kingston, Drew, et al., *Pornography Use and Sexual Aggression: The Impact of Frequency and Type of Pornography Use on Recidivism Among Sexual Offenders*, Aggressive Behavior, Volume 34 (2008) (internet citation omitted)).

Regardless of which studies and data are to be credited, Mr. Bedell is not a "mere" internet offender. He has already crossed a line between "mere" collecting and sexual voyeurism of the worst kind – involving not only minors, but *his own daughter*. Mr. Bedell manifestly lacks "the capacity to follow externally imposed rules." In fashioning a sentence that will protect the community, the question the Court should ask is not whether "internet offenders" *in the abstract* pose a threat of "acting out" but rather, "What line will *Mr. Bedell* cross next?"

## CONCLUSION

For all of the above reasons, the government requests an above-guidelines sentence of ten years imprisonment and a lifetime of supervised release.

Dated at Milwaukee, Wisconsin this 8th day of April, 2010.

        JAMES L. SANTELLE
        United States Attorney

By:    s/Jonathan H. Koenig
        Assistant United States Attorney
        Bar Number: 1045517
        Attorney for Plaintiff
        Office of the United States Attorney
        Eastern District of Wisconsin
        517 E. Wisconsin Avenue, Room 530
        Milwaukee, Wisconsin 53202
        Telephone: (414) 297-1700

Fax: (414) 297-1738
E-Mail: jonathan.h.koenig@usdoj.gov